IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frank C. Brown, Jr.,                    :

              Plaintiff,       :   Case No. 2:10-cv-965

      v.                         :   JUDGE SARGUS
                              MAGISTRATE JUDGE KEMP
Captain Andre J. Johnson,               :
    et al.,
              Defendants.       :

## REPORT AND RECOMMENDATION

Plaintiff, Frank C. Brown, a state prisoner confined at the London Correctional Institution, has submitted a complaint and a request for leave to proceed *in forma pauperis*. As required by a provision of the Prison Litigation Reform Act, see 28 U.S.C. §1915(b), the Court has assessed a partial filing fee. As also required by that Act, see 28 U.S.C. §1915A(b)(1), the Court now conducts an initial screening of the complaint to determine if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted ...." For the following reasons, the Court will recommend dismissal of this action under §1915A(b) as well as under 28 U.S.C. §1915(e)(2).

### I.  The Complaint

The following facts are all taken from Mr. Brown's complaint. The Court keeps in mind that because Mr. Brown is without counsel, his complaint must be liberally construed. See Haines v. Kerner, 404 U.S. 519 (1972). Although the events described in Mr. Brown's complaint took place over a long period of time, it appears that the gist of his complaint arises out of events which began on January 26, 2010. On that date, Mr. Brown filed an informal complaint against a corrections officer accusing the officer of throwing away a legal mail pass. That

informal complaint, which is attached to Mr. Brown's complaint as Exhibit F, asserted that the officer had thrown the this type of pass away on two occasions.  The complaint also alleged that a different corrections officer refused to show Mr. Brown a log book that had pertinent information in it.  Mr. Brown stated in his complaint that the institution administration had "better tell" the corrections officer that the log book was a public record and that Mr. Brown would file a mandamus action to prove it.

Two days later, Mr. Brown was taken to see Defendant Captain Johnson and accused of threatening the institution's staff in his informal complaint.  After some discussion, Captain Johnson decided not to charge Mr. Brown with an institutional offense, but he did advise Mr. Brown that he needed to be careful how he worded his informal complaints and that if his next complaint was not worded properly, he would be placed in segregation.  Mr. Brown claims not to have filed an informal complaint since that date.

Perhaps as part of the same type of conduct, Mr. Brown alleges that he has been continually threatened and harassed by members of the institution staff for his litigation activities. He asserts, for example, that defendant Ferrell, a corrections officer, stops and harasses him every time that Mr. Brown is seen with legal material, and that another corrections officer, defendant Klotz, has also been recruited to assist in this harassment.  He claims that yet a third corrections officer, defendant Frye, wrote him a false conduct report on July 9, 2010, and that defendant Klotz did the same thing nine days later.  He also asserts that defendant Hurwood, a librarian, engaged in similar conduct.  Mr. Brown was never convicted of any of these institutional offenses.

Perhaps by way of background, Mr. Brown alleges that in

2009, defendant Blackwell, who is the Inspector of Institutional
Services, threatened to suspend him for using the inmate
grievance procedure due to abuse and disrespect to staff and also
retaliated against him on one occasion for using the process.
Due to his uncertainty over how properly to word his grievances,
Mr. Brown asserts that he is now unable to utilize the inmate
grievance process to raise issues concerning the conditions of
his confinement.  He claims that these events have deprived him
of his rights under the First, Fifth and Fourteenth Amendments to
the United States Constitution.

II.  <u>The Viability of the Claims</u>

In keeping with the admonition that *pro se* complaints must
be liberally construed in favor of the pleader, the Court
construes Mr. Brown's complaint as attempting to state both a
claim that Mr. Brown's First Amendment rights have been directly
violated by the defendants' conduct which has prevented him from
using the prison grievance procedure, and a claim that the
defendants have retaliated against him for his having used the
grievance procedure, which is an exercise of his First Amendment
rights.

The First Amendment generally protects the right to petition
the government for the redress of grievances.  The mere fact of
incarceration does not eliminate that right altogether.  As the
Court of Appeals has observed, "an individual in the custody of
the state ... retains his rights to free speech, and is entitled
to petition the state for redress of grievances." <u>Noble v.
Schmitt</u>, 87 F.3d 157, 162 (6th Cir. 1996).  Nevertheless, as the
<u>Noble</u> court also stated, <u>see id</u>., "[t]he ambit of those rights
must be measured with regard to the legitimate needs of the
particular institution."  In other words, inmates are not
entitled to petition for redress of their grievances however and
whenever they want, but must follow regulations or procedures

-3-

imposed by the institution so long as any restrictions imposed by such regulations or procedures are reasonably related to legitimate penological interests.  See generally Turner v. Safley, 482 U.S. 78 (1987).

Here, Mr. Brown has not alleged that he has actually been prohibited from filing informal grievances, or that he has ever been punished for doing so.  Rather, he claims that the circumstances surrounding his January 26, 2010 grievance, including the warning that he must word his grievances properly in order to avoid punishment, has had the effect of deterring him from filing grievances for fear that he will be punished.

This allegation does not state a viable constitutional claim.  The unpublished opinion in Walker v. Michigan Dept. of Corrections, 128 Fed. Appx. 441 (6th Cir. April 1, 2005) is particularly helpful here.  That decision also recognized that there is a constitutional right for prisoners to file grievances without being subject to retaliation, but it held that this constitutional right was not infringed by "a policy that merely provided that a grievance officer would screen frivolous grievances."  Id. at *3.  There were consequences for filing frivolous grievances, including an extension of an inmate's status on "modified access," but the court held that this was not enough to deter a person of ordinary firmness from filing grievances.  See id. at *3-4, citing Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Here, even according to Mr. Brown's complaint, prison officials did no more than inform Mr. Brown that if he filed a grievance which could be construed as threatening or disrespectful, he could be subjecting himself to institutional punishment.  In fact, Ohio Administrative Code 5120-9-31(F) contains exactly this language, stating that "[a]n inmate may be subject to disciplinary action for disrespectful, threatening or

otherwise inappropriate comments made in an informal complaint, grievance or grievance appeal." Certainly, prison officials may legitimately review informal complaints for compliance with this regulation, and may inform inmates that it will be enforced against them, especially where, as here, the informal complaint which gave rise to the meeting between Mr. Brown and Captain Johnson appears to have come close to the line of being disrespectful. As noted above, there is language in the complaint telling prison officials what they had "better do" in their supervision of a corrections officer, as well as the threat of litigation, which may, if the litigation is not properly grounded in law, be treated as a threat. See Harrison v. Seay, 856 F.Supp. 1275 (W.D. Tenn. 1994).

Subjectively, Mr. Brown may have felt uncertain about whether he could file informal complaints in the future without risking discipline, but he has not alleged that he was subjected to a standard that either varied from the one contained in O.A.C. §5120-9-31(F) or a standard that was applicable only to him. Objectively, however, telling an inmate that he or she may be subject to discipline if the inmate's conduct violates a written institutional rule is not enough to deter a person of ordinary firmness from engaging in protected conduct in the future. The threat of discipline received by Mr. Brown addressed only unprotected conduct, namely filing a threatening or disrespectful grievance. It is constitutional for a prison to punish inmates who submit disrespectful grievances or complaints because such disrespectful conduct implicates concerns about the "constant state of tension over who is to control the prison" and the "'ever-present potential for violent confrontation.'" Brown v. Carpenter, 889 F.Supp. 1028, 1033 (W.D. Tenn. 1995). Thus, the complaint fails to state a claim under the First Amendment with respect to the January 28, 2010 incident or its impact on Mr.

-5-

Brown's willingness to submit informal complaints to officials at his institution.

Mr. Brown has also alleged a variety of incidents which he claims to be related in some way to his ability to use the prison grievance process.  However, he admits to not having filed any grievances since January 26, 2010.  The allegation that false conduct reports were filed against him in July or September of 2010 does not plausibly state a claim that this type of alleged harassment was related in some way to his use of the grievance process more than six months before.  Claims that are not plausible do not satisfy the new standard to be applied when determining if a complaint could survive a Rule 12(b)(6) motion to dismiss.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007).  It is also the case that "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing grievances and then claiming that everything that happens to him is retaliatory." Rienholtz v. Campbell, 64 F. Supp. 2d 721, 734 (W.D. Tenn.), aff'd 198 f.3d 247 (6th Cir. 1999).  There is still a causation element involved in a retaliation claim which requires an inmate to prove (or, in this context, to allege plausibly) that "the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).  Mr. Brown has not done that here.

Further, the conduct described in Mr. Brown's complaint is not independently actionable.  It is clear that mere verbal harassment and threats directed to an inmate by a prison guard, while perhaps unprofessional, are not unconstitutional.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir 1987).  A prisoner simply "has no protectable right

not to have threats made against him or verbal abuse directed towards him." <u>Willis v. Draper</u>, 2010 WL 1875704, *5 (E.D. Tenn. May 10, 2010).

This principle applies not just to verbal harassment and threats but to allegedly harassing activities such as the filing of false conduct reports.  "The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986); <u>see also Jackson v. Hamlin</u>, 61 Fed. Appx. 131, *2 (6th Cir. March 11, 2003).  Mr. Brown has not claimed that as a result of any of these allegedly false charges, he was either convicted of a prison disciplinary offense or subjected to some punishment that is atypical for persons already confined in prison and which would therefore implicate his due process rights.  <u>See Sandin v. Conner</u>, 515 U.S. 472 (1995). Consequently, no viable constitutional claim can be based on the allegations of harassment or threats which are found in Mr. Brown's complaint.

### III.  <u>Recommended Order</u>

It is therefore recommended that this case be dismissed under 28 U.S.C. §§1915(e)(2) and §1915A(b).  If this recommendation is adopted, a copy of the complaint, this Report and Recommendation, and any dismissal order should be mailed to the defendants.

### IV.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those

-7-

portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-8-