IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FRANK C. BROWN, Jr.,

        Plaintiff,

v.

CAPTAIN ANDRE J. JOHNSON,
   et al.,

        Defendants.

Case No. 2:10-cv-965

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

## OPINION AND ORDER

This is a prisoner civil rights case. On December 10, 2010, the Magistrate Judge issued a Report and Recommendation recommending that the case be dismissed for failure to state a claim upon which relief can be granted. Plaintiff, Frank C. Brown, Jr., has filed an objection to that recommendation. For the following reasons, and after a *de novo* review of the issues, the Court will sustain the objection and order service of the complaint.

I.

As the Report and Recommendation explains this case, Mr. Brown, who is a prisoner at the London Correctional Institution, filed this action alleging that a course of events which began on January 26, 2010 ultimately resulted in the violation of his constitutional rights. On January 26, 2010, Mr. Brown filed an informal complaint against a corrections officer accusing the officer of throwing away a legal mail pass. He asserts that this was not the first time the officer had done so. Later, a different corrections officer refused to show Mr. Brown a log book, which Mr. Brown claims was a public record. Mr. Brown took issue with this refusal and said he would

litigate the question if need be.

A day or two after making his views known, Mr. Brown was taken to see Defendant Captain Johnson and accused of threatening the institutional staff. No institutional charges were filed, but Mr. Brown claims that the conversation he had with Captain Johnson deterred him from filing informal complaints afterward. He also claimed that in 2009, defendant Blackwell, the Inspector of Institutional Services, threatened him and retaliated against him for his use of the institutional grievance process, and that this was also a factor in his fear of using the process in the future.

These are not the only two threats Mr. Brown claims to have received. In fact, he asserts that other members of the London Correctional Institution staff routinely harass him about his litigation activities. In particular, he avers that the other defendants have taken steps up to and including charging him falsely with institutional offenses in retaliation for his being so litigious. In his complaint, he maintains that all of these actions violated the First, Fifth and Fourteenth Amendments to the United States Constitution. The Magistrate Judge construed Mr. Brown's complaint as alleging both the direct interference with Mr. Brown's alleged right to use the prison grievance process and retaliation by prison officials for his having done so.

II.

Mr. Brown has filed a lengthy objection to the recommendation that his complaint be dismissed. A portion of that objection invites the Court to examine matters outside the record and which do not appear on the face of the complaint, such as a comparison of the number of grievances filed by Mr. Brown at his prior institution to the number he has filed at London. Although the Court is required to review the recommendation of the Magistrate Judge on


dispositive matters in a *de novo* fashion, the Court may not take into account, when performing that review, matters which are not a part of the record or which were not before the Magistrate Judge. *See, e.g., Cusamano v. Sobek*, 604 F.Supp.2d 416, 424 n.1 (N.D.N.Y. 2009). Thus, the Court will not discuss these matters further.

Mr. Brown also objects to the statement in the Report and Recommendation that the incident of January 26, 2010 was the beginning of the series of events leading to this lawsuit, noting that his allegations go back to 2008 and that the incident about the log book was basically the "last straw." However, the Report and Recommendation does mention incidents from previous years, and the Court will assume, based on the complaint, that the conduct which Mr. Brown alleges took place occurred at various times in 2008 and 2009 as well. That understanding, which appears to have been shared by the Magistrate Judge, does not materially change the analysis of whether the complaint states a claim upon which relief can be granted.

III.

The gist of Mr. Brown's objection appears to be that his complaint clearly alleges that, on several occasions, he was punished for filing grievances, and that the First Amendment does not permit even minor punishment to be meted out in response to an inmate's exercise of First Amendment rights. He identifies the punishment given as including four hours of extra duty on one occasion, a verbal reprimand on another occasion, and being removed from his job in the law library as yet another punishment. In each case, he claims that the conduct he engaged in which led to this punishment was not disrespectful or threatening, and was therefore protected by the First Amendment. He also argues that on several occasions when he was charged with disrespect based on a grievance he filed, the officer who initiated the charge was not the Institutional

Inspector (whom he claims is the only one who may legitimately institute disciplinary proceedings based upon the content of a grievance), and that on at least one occasion an institutional official recommended that Mr. Brown's grievance privileges be suspended, although that recommendation was never carried out. He also complains that he was handcuffed once when charged by the wrong official with a disciplinary offense.

A portion of this objection does not raise any valid constitutional issues. Whatever state law (in the form of prison regulations, or even the Ohio Administrative Code) may say about who may initiate prison discipline based on the content of an inmate grievance, there is nothing in the United States Constitution that either incorporates such procedural provisions or makes their violation a subject for litigation under 42 U.S.C. §1983. *See Sandin v. Conner*, 58 U.S. 472, 482-83 (1995) (prison regulations are designed "to guide correctional officials in the administration of a prison" and not "to confer rights on inmates"). Thus, the question comes down to this: does Mr. Brown's complaint adequately allege that he suffered retaliation of a constitutionally-significant nature when he was punished for filing a grievance for which punishment could not legitimately have been handed down?

The Report and Recommendation, relying heavily on the Court of Appeals' unpublished opinion in *Walker v. Michigan Dept. of Corrections*, 128 Fed. Appx. 441 (6th Cir. April 1, 2005), held that Mr. Brown's complaint did not state a viable claim for retaliation. In *Walker*, the Court of Appeals recognized that prisoners do have the right to file legitimate grievances without fear of retaliation, but it held that this constitutional right was not infringed by "a policy that merely provided that a grievance officer would screen frivolous grievances" and that the fear that an inmate might be punished for filing a frivolous grievance (and therefore "chilled" in the

-4-

exercise of the right to file legitimate grievances) was not significant enough to deter inmates of reasonable firmness from exercising their First Amendment rights. *See id.* at *3-4, *citing Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, however, Mr. Brown claims that prison officials did more than simply inform (or threaten) him that if he filed a grievance which fell outside the scope of the First Amendment (because, for example, it threatened an corrections officer or it was factually unsupported), he could be punished under Ohio Administrative Code 5120-9-31(F) (which states that "[a]n inmate may be subject to disciplinary action for disrespectful, threatening or otherwise inappropriate comments made in an informal complaint, grievance or grievance appeal"). Rather, he claims that they actually punished him in a number of different ways for filing legitimate grievances, including being given four hours of extra duty on one occasion, a verbal reprimand on another occasion, and being removed from his job in the law library. Since the filing of a legitimate grievance is protected activity (which is the first element of First Amendment claim based on retaliation), in order for the complaint to state a valid retaliation claim, it must set forth facts from which it might plausibly be concluded that the remaining two elements of a First Amendment retaliation claim can be satisfied. Those two elements are, under *Thaddeus-X v. Blatter*, that "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and ... there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394.

The second element of this test is not satisfied simply because the prisoner suffered some unpleasant consequence after filing a legitimate grievance. *Thaddeus-X* itself recognized that

-5-

"[i]t is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable." *Id.* at 396. That is why the Court of Appeals adopted the "person of ordinary firmness" standard, which is the same standard used in the employment context to determine whether an employee has suffered an "adverse action." It also observed, however, that the standard is not rigorous, and that it "is intended to weed out only inconsequential actions...." *Id.* at 398.

In *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002), the Court of Appeals appeared to endorse the idea that the threat of significant punishment is enough to meet this standard even if the threatened punishment never actually occurs. There, the inmate was neither removed from the general population when charged with major misconduct (which he alleged was in retaliation for filing a grievance), because he was already in segregation when the charge was filed, nor was he convicted of that infraction. Still, the Court of Appeals held that "being subjected to the risk of ... severe sanctions for raising a legitimate complaint" would deter a person of ordinary firmness from making legitimate complaints, thus satisfying this element of a retaliation claim. On the other hand, verbal harassment or minor threats do not rise to this level, *Smith v. Craven*, 61 Fed.Appx. 159 (6th Cir. March 19, 2003), nor does being placed on "modified access" status (a status which restricts, but does not eliminate, an inmate's ability to file grievances), *see Jackson v. Madery,* 158 Fed.Appx. 656 (6th Cir. November 17, 2005). What allegedly happened to Mr. Brown must be viewed in light of these examples of what does, and does not, constitute adverse retaliatory action.

The Court has little trouble determining that, as a matter of law, being given a verbal reprimand or being assigned four hours of extra duty would not deter a person of ordinary

firmness from filing legitimate grievances against prison officials. These are exactly the kind of trivial or insignificant events that the *Thaddeus-X* test was designed to "weed out." However, it is not so clear that the removal of an inmate from his job assignment is as trivial. At least one district court has described this type of action as "possibly" being enough to satisfy the second element of the test. *See Tindell v. Iweimrin,* 2009 WL 2761291 (W.D. Ky. August 27, 2009). The Court of Appeals has also held that the loss of a prison job (although that job loss was accompanied by other circumstances not present here) may be enough to satisfy this element. *See Siggers-El v. Barlow* 412 F.3d 693 (6th Cir. 2005); *see also Pasley v. Conerly*, 345 Fed.Appx. 981 (6th Cir. September 29, 2009) (the combination of loss of a job and transfer to a facility where it would be harder for an inmate's family to visit him was enough to satisfy this element). Here, the allegations concerning loss of his library job, coupled with the times when Mr. Brown claims to have been issued false conduct reports, may be enough to save his complaint from dismissal at the initial screening stage. The Court therefore declines to order such a dismissal, and will direct the Marshal to serve the complaint. By doing so, however, the Court does not necessarily intend to preclude the defendants, or some of them, from filing a motion to dismiss, particularly if the motion relies on cases not cited here or raises other defenses which the Court has not considered in the specific context of an initial screening.

IV.

For the reasons stated above, the plaintiff's objection (#9) to the Report and Recommendation is **SUSTAINED** and the Report and Recommendation is **NOT ADOPTED**. Having screened the complaint as required by 28 U.S.C. §1915(e)(2) and 1915A, the Court **ORDERS** that the United States Marshal serve upon each defendant named in part III, B and C

of the form civil rights complaint, a summons, a copy of the complaint, and a copy of this Order.

The Clerk of Court is **DIRECTED** to mail a courtesy copy of the complaint and a copy of this Order to the Attorney General of Ohio, Criminal Justice Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215. Each defendant is ORDERED to answer or otherwise respond to the complaint within forty-five (45) days after being served with a copy of the complaint and summons.

**IT IS SO ORDERED.**

3-31-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**