IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Frank C. Brown, Jr.,

    Plaintiff,

v.

Captain Andre J. Johnson, et al.,

    Defendants.

Case No. 2:10-cv-965

JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

## OPINION AND ORDER

In this prisoner civil rights case, which involves a claim by Plaintiff Frank C. Brown, Jr., that he was retaliated against based on the exercise of his First Amendment rights, defendants moved to dismiss the complaint, asserting that they are entitled to qualified immunity.

In a Report and Recommendation filed on January 6, 2012, the Magistrate Judge recommended that the motion to dismiss be denied and that Mr. Brown be permitted to file an amended complaint. Defendants objected to that recommendation (Doc. 55). In addition, Mr. Brown filed two separate documents which purport to be objections (Doc. 60 and Doc. 66). For the following reasons, all of the objections will be overruled and the Report and Recommendation will be adopted.

I.

When objections are received to a report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3). After such review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; see also 28 U.S.C. § 636(b)(1)(C).

II.

Neither party objects to the way in which the Report and Recommendation summarizes the key facts of the case, so the Court adopts that part of the Report. In short, Mr. Brown alleges that in September, 2010, he was removed from his prison job in the law library as retaliation for the exercise of his First Amendment rights. Prior to that time, he had filed an informal complaint against a corrections officer about the loss of a legal mail pass, and, when he was not allowed to see a log book, he threatened to sue. He was then threatened with institutional charges but none were ever filed. His complaint recites other instances where corrections officials harassed him for filing grievances or pursuing litigation, including filing false charges against him, and he asserts that all of this retaliatory conduct culminated in the loss of his job assignment in the law library. He has also claimed that, on other occasions, he was given some extra duty as punishment and given a verbal reprimand, again as part of an overall pattern of retaliation. In an order filed on April 4, 2011, the Court concluded that these allegations were sufficient, under the law of retaliation as set forth in *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999), to state a claim which could survive the initial screening required by 28 U.S.C. §§1915(e) and 1915A.

The defendants' motion to dismiss, based on qualified immunity, argued that reasonable prison officials, in the relevant time frame, could not have known that the Constitution forbade this type of retaliatory conduct. Given that *Thaddeus-X* clearly held that any action on the part of prison officials which would discourage a person of ordinary sensibilities from the further exercise of his constitutional rights is prohibited, the question is whether a reasonable official would have appreciated the fact that the totality of the retaliatory actions alleged by Mr. Brown would discourage the typical prison inmate from First Amendment-protected activities such as

2

using the grievance process or pursuing litigation. The Magistrate Judge held that the law in this area was clearly established and that, assuming (as the Court must) that Mr. Brown's claims are accurate, the defendants were not entitled to qualified immunity.

In their objections, defendants raise two distinct arguments: that the applicable case law, and particularly cases from within the Sixth Circuit, do not support the theory that the various actions Mr. Brown complains of constitute impermissible retaliation, even if they occurred as a direct result of the exercise of his constitutional rights; and that the complaint must be parsed to determine what action each individual defendant allegedly took, and that, standing alone, no one action by any defendant constituted actionable retaliation. This second argument does not appear in their motion to dismiss or their reply brief, and the Court will not consider it here since neither the Magistrate Judge, nor Mr. Brown, in opposing the motion to dismiss, had the opportunity to address it. *See, e.g., Guethlein v. Potter*, 2011 WL 672046, *8 (S.D. Ohio February 17, 2011)("'[A]bsent compelling reasons, [the Federal Magistrate Judges Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate,'" *quoting Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). Thus, the only issue raised in defendants' objections which the Court is required to decide is if the case law was clearly established, as defined in cases such as *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), about whether the actions described in the complaint constituted impermissible acts of retaliation.

The Report and Recommendation cited to numerous decisions from other district courts and from Courts of Appeals going back as far as 1991 which clearly hold that taking away an inmate's job assignment in retaliation for the exercise of constitutional rights was itself a

3

constitutional violation. All of those cases used essentially the same standard as set forth in *Thaddeus-X*, and they come from at least five other circuits, with the last-cited decision in the Report and Recommendation having been decided in 2004. The Report and Recommendation also cited to a number of cases from within the Sixth Circuit which held that the loss of a prison job, when coupled with various other actions - for example, transfer to another prison, the loss of some wages, or the denial of copies and supplies - can constitute actionable retaliation. The latest of these cases, *McGough v. Corrections Corp. of America,* 2007 WL 3088216 (M.D. Tenn. October 19, 2007) was decided in 2007, and the others were earlier. From this combination of case law, the Magistrate Judge concluded that even though there is not a case from within this Circuit which is precisely on point, given the clear holding of *Thaddeus-X* that this prong of the test is meant to be a *de minimis* requirement, it was clearly established by 2008 that engaging in a pattern of retaliation against an inmate for his use of the grievance process or his resort to the court system, which pattern included threats of discipline, assigning extra duties, and taking away a prison job assignment, was constitutionally prohibited.

Defendants agree that if the case law outside the Circuit clearly foreshadows a particular result based upon well-established legal principles, that case law can constitute the type of clearly established law which will defeat a claim of qualified immunity. Indeed, they can hardly argue otherwise. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("officials can still be on notice that their conduct violates established law even in novel factual circumstances" and there is no "requirement that previous cases be 'fundamentally similar'"); *Barker v. Goodrich*, 649 F.3d 428, 436 (6th Cir. 2011)("the Supreme Court has established that a wide variety of sources, even those that are not authoritative, can provide defendants with fair warning" of the

4

unconstitutionality of their conduct). They claim, however, that there is a wealth of authority within this Circuit which establishes both that it is not unconstitutional, in and of itself, either to transfer a prisoner or take away his job, and that prison officials are allowed to remove an inmate from his prison job simply in order to "give prison staff a respite from the inmate's grievances." Objection, Doc. 55, at 4. The former argument is irrelevant, however, and the latter is incorrect.

The law with respect to retaliation simply does not require that every act taken by a prison official in retaliation for an inmate's exercise of his constitutional rights be an independent constitutional violation. If that were the case, the retaliation claim would always be superfluous, because the inmate could simply proceed on the underlying constitutional violation. Nothing in the *Thaddeus-X* formulation requires that an act which would deter a person of ordinary firmness from exercising his constitutional rights rise to the level of a separate constitutional violation, and many of the actions which have been held to meet that standard - including transfers to other institutions - clearly do not. *See, e.g. Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). In fact, the Court of Appeals has squarely rejected the argument that only unconstitutional actions can qualify as the type of adverse acts which would deter a person of ordinary firmness from engaging in constitutionally-protected activity. *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (rejecting a district court's acceptance of this argument as "misdirected"). This Court cannot accept such an argument here.

Defendant's other argument is that the law in this Circuit is actually clearly established in the other direction - that is, that actions like the ones Mr. Brown complains about have been held not to meet the *Thaddeus-X* test. The cases they cite do not support their argument, however. One case from this district, *Scuba v. Wilkinson*, 2010 WL 99348 (S.D. Ohio January 6, 2010),

5

held, in *dictum*, that the mere transfer from one prison job to another, without more, did not constitute an adverse action, but those are not the facts here, and an earlier decision in the same case, ruling on a motion to dismiss as opposed to a later-filed motion for summary judgment , *see* 2007 WL 2874865, *9 (S.D. Ohio September 27, 2007), determined that allegations that the plaintiffs were removed from their prison jobs, coupled with other actions (shakedowns, false conduct reports, and placement in security control) were "sufficiently adverse for purposes of plaintiffs' retaliation claim." The retaliation claim eventually failed to survive summary judgment because plaintiffs were unable to prove that they actually engaged in protected activity or that any actions were taken in retaliation for having done so, despite the sufficiency of their allegations (which apparently they were unable to prove) to the contrary. The other district court cases cited by defendants also have various distinguishing factors, and none supports the proposition that the complete loss of a prison job and other consequences are not sufficiently adverse actions for purposes of a retaliation claim (for example, in *Coates v. Kafczynski*, 2006 WL 3344900 (W.D. Mich. Nov. 17, 2006), the plaintiff was demoted to a lesser job but he was not qualified for the job from which he was transferred, and he was not subjected to other retaliatory acts, making the job transfer the type of *de minimis* action which falls outside the scope of *Thaddeus-X)*.

Defendants also cite to a host of unreported decisions from the Court of Appeals in support of their position. The only case not cited in a footnote, *Jewell v. Leroux*, 20 Fed. Appx. 375 (6th Cir. September 21, 2001), held that the transfer of an inmate to another prison in order to give the staff at the first prison a respite from his filing of grievances was not retaliatory; the transfer was simply to the general population, which was not a sufficiently adverse action, and

the motive apparently was not to retaliate but simply to remove the prisoner from the conditions about which he was complaining. Again, those are not the facts here; defendants do not claim that threatening Mr. Brown, assigning him extra duty, or removing him from his job were all steps taken to prevent him from filing more grievances, but, for purposes of the instant motion, they must concede that these actions were taken in response to his having filed grievances and pursued litigation up to that point. Further, *Jewell* and other decisions such as *Mandela v. Campbell*, 181 F.3d 102 (6th Cir. May 26, 1999)(unreported) and *Herron v. Campbell*, 198 F.3d 245 (6th Cir. November 9, 1999) (unreported) involve ordinary transfers, which is not what Mr. Brown alleges; another case cited by defendants, *Goddard v. Kentucky Dept. of Corrections*, 205 F.3d 1340 (6th Cir. February 7, 2000), also in part a transfer case, concluded that the inmate had not engaged in any protected activity (he had cursed prison officials) and that he had also failed to prove that he was punished as a result of these activities. Taken together, these cases clearly establish that the transfer of an inmate from one institution to another, without any additional adverse consequences flowing from the transfer, is a "mere incident" of prison life which would not deter an inmate of ordinary firmness from engaging in protected activity - but, of course, this is not a transfer case, and Mr. Brown has alleged a combination of retaliatory acts.

    The "bottom line" is this. Any reasonable person reading the Court of Appeals' decisions in *Thaddeus-X* and *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), where the court lists a whole host of adverse actions which satisfy *Thaddeus-X*, including harassing cell searches, seizure of legal materials, denial of hygiene items, destruction of legal materials, transfer to segregation, confiscation of tennis shoes, and denial of access to the law library (and where it held that the specific acts in that case, stealing legal papers and snacks from the inmate, also satisfied that

7

test), would have "fair warning" that the actions in this case could be deemed sufficiently adverse to run afoul of the constitution. And the touchstone of qualified immunity is just such "fair warning"; "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful,'" *Hope v. Pelzer,* 536 U.S. at 379, *quoting Saucier v. Katz,* 533 U.S. 194, 206 (2001), and the salient question is "whether the state of the law in [2008, 2009 and 2010] gave [defendants] fair warning that their alleged treatment of [Mr. Brown] was unconstitutional." *Id.* at 741. Here, the Court agrees with the Magistrate Judge that the law did give the defendants fair warning that if, as Mr. Brown alleges, they embarked on a continued course of conduct designed to punish or deter him from exercising his constitutional rights, and that course of conduct included the various actions he attributes to them, the First Amendment would have been violated. It is important to remember that all of this discussion is occurring in the context of a motion to dismiss, where Mr. Brown's allegations are deemed to be true, and that the defendants will have ample opportunity to challenge the factual basis of his claims at a later stage of the case. At this point, however, the Court affirms its earlier decision that these claims are sufficient to survive a Rule 12(b)(6) motion to dismiss based on qualified immunity, and it will overrule defendants' objections to the Report and Recommendation.

III.

Somewhat surprisingly, although the Report and Recommendation concluded that defendants' motion to dismiss was not well-taken, Mr. Brown has also filed objections to it. His first objection, which was filed in all five of his pending cases, deals with his motion to strike and to supplement and has been addressed in several other rulings by the Court. For those same reasons (i.e. that the motion to supplement and to strike did not specify what supplements Mr.

Brown wished to make to his complaint and that his request for *carte blanche* permission to supplement his pleadings found no support in the Rules of Civil Procedure), the Court overrules any objections he has to that portion of the Report and Recommendation.

In his second objection, Mr. Brown does not actually address the specifics of the Report and Recommendation at all beyond reiterating his arguments about the motion to supplement and to strike. Because he has made no specific objections, and because the recommendation is favorable to him, the Court will also overrule his second objection.

IV.

Finally, the Court notes that the Report and Recommendation also granted Mr. Brown's motion for leave to file an amended complaint, and he was to do so within 21 days. He has not amended his complaint. However, one of his filings (Doc. 61) asserts that he has been denied access to needed legal materials and that this denial is affecting his ability to litigate this and other cases. If he still wishes to file an amended complaint in this case, he must either do so within 21 days of the date of this order, or file a specific motion for an extension, accompanied by a description of where the legal materials are that he needs in order to prepare the amended complaint and his efforts to retrieve or access them. Should he do so, the Court will expect defendants to respond on that subject, and it can then made a determination about whether Mr. Brown is entitled to some type of relief with respect to accessing his legal papers.

V.

For the reasons stated above, defendants' and Mr. Brown's objections (Docs. 55, 60 and 66) to the Report and Recommendation are **OVERRULED** and the Report and Recommendation (Doc. 52) is **ADOPTED AND AFFIRMED**. Defendants' motion for

9

judgment on the pleadings (Doc. 17) is **DENIED.** The previously-ordered stay of this case is lifted, and the Magistrate Judge is directed to issue a new scheduling order. Should Mr. Brown wish to amend his complaint, he shall, within 21 days, either file the amended complaint or move for an extension based on specific information about his claimed lack of access to the necessary legal materials to do so.

**IT IS SO ORDERED.**

8-6-2012
**DATE**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**